ROBBINS *et al. v.* PHILLIPS, HIGHWAY COMMISSIONER, *et al.*

(*Nashville*, December Term, 1939.)

Opinion filed February 17, 1940.

569

WARD R. CASE, of Jamestown, and LEWIS S. POPE, of Nashville, for complainants.

ERNEST F. SMITH, Assistant Attorney-General, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the chairman of the county court of Pickett County and the highway commission of that county against the Commissioner of the Department of Highways and Public Works of the State of Tennessee and the Director of Accounts of the State of Tennessee to compel defendant officials to turn over to the trustee of Pickett County said county's portion of the gasoline tax allotted by chapter 45 of the Public Acts of 1931 for the maintenance and improvement of county roads. An injunction was also prayed to restrain said

officials from otherwise disposing of Pickett County's share of said fund. An alternative writ of *mandamus* issued and the state officials made a return thereto and also filed a separate answer to the bill. The chancellor awarded the writ of *mandamus* as prayed in the bill directing defendant officials to turn over to the trustee of Pickett County all that county's portion of said fund accruing since April 12, 1939. The chancellor divided the costs between complainants and defendants but did not issue any injunction. The defendants prayed a broad appeal and both defendants and complainants assigned errors.

On April 10, 1939, by a bare majority vote, the quarterly county court of Pickett County passed the following resolution:

"Motion by A. G. Parrott and seconded by George W. Rich that 2c gas tax belonging to Pickett County be and the same is hereby turned over to the State Department of Highways and Public Works to be expended by them for a period of twelve months from April 12th, 1939, to April 12th, 1940."

Within a few days after the passage of said resolution a majority of the members of the county court became dissatisfied with same, claiming that its passage was procured by false promises and representations of certain parties. Called meetings of the quarterly county court were had in which that body undertook to rescind the resolution of April 10, 1939, and it was resolved that counsel be employed to take necessary steps by way of preventing the Commissioner of Highways from undertaking to proceed under said resolution. It appears that the Commissioner of Highways was notified within a few days after April 10, 1939, of the dissatisfaction in the county court and the claim by the members

of that body that the passage of the resolution had been procured by misrepresentations.

The Commissioner of Highways took the position that his Department was without responsibility for any misrepresentations made to the quarterly county court; that the resolution of April 10, 1939, was valid and was passed by a majority of the justices; and that the justices had no authority to rescind said resolution save at a regular meeting of the quarterly county court held twelve months or more after the passage of such resolution. The stipulation of facts shows that the Commissioner of Highways moved some equipment into Pickett County and did some work on the roads in that county without consultation with the highway commission or other officials of said county as to where, and upon which roads, said work should be done.

Chapter 45 of the Public Acts of 1931 provides that a sum equivalent to that derived from the levy of two cents on each gallon of gasoline shall be set aside in a separate fund to be used exclusively as "County Aid Funds." The act then provides that each county's share shall be paid over monthly to the various county trustees "to be used by the county highway authorities in the building, repairing and improvement of county roads and bridges." Section 3.

The act continues with this proviso: ". . . the Quarterly County Court of any county of the State may, at any regular term by resolution passed by a majority of the Justices present and spread upon the minutes of the Court, direct the State Highway Department to expend said counties pro-rata of said fund on such county highways and bridges as the county highway department of said county by resolution may direct, and in such

counties as have no highway department then the County Judge or Chairman may so direct.'' Section 3.

Chapter 152 of the Public Acts of 1937, amending chapter 45 of the Public Acts of 1931, contains the following:

''At any time after the expiration of twelve months from the passage of any resolution by the Quarterly County Court turning said funds over to the State Highway Department to expend on the roads of the county, the Quarterly County Court of said County, whether the said resolution has been passed and the funds paid over to the State Highway Department either before the passage of this Act or after its passage, may, at any regular session of said Quarterly County Court, by resolution adopted by a majority of all the Justices of the Peace composing said court and spread on the minutes of the court, direct the State Highway Department to turn back to the county all such funds in its hands belonging to the county to be thereafter expended by the County Highway Authorities on its county roads, as provided for by said Chapter 45 of the Public Acts of 1931, provided that at any regular session of the Quarterly County Court within said twelve months' period, the Court may pass such resolution to take effect at the end of the twelve months' period.''

Now going back to the resolution passed by the quarterly county court of Pickett County on April 10, 1939, it will be observed that the county's portion of the gas tax is directed to be turned over to the State Department of Highways and Public Works ''to be expended by them for a period of twelve months from April 12, 1939, to April 12, 1940.'' That is all. There is no restriction placed upon the State Highway Department as to its use of the fund. No direction as to its employment. Under the resolution, the Highway Department was privi-

leged to use the fund turned over in any way it saw proper, without consultation with anybody. To use it on county roads or state highways. Indeed the resolution did not limit the use of the money by the State Highway Department to Pickett County.

The chancellor was of opinion that this resolution was void and we think that he was right. The only authority of the quarterly county court was to turn this money over to the State Highway Department to be used "on such county highways and bridges as the county highway department of said county" might direct, it appearing that the county had a duly organized county highway commission. The county court had no authority to turn this over to the State Highway Department to be used according to the ideas of the Commissioner of that Department.

That the State Commissioner of Highways understood the resolution to give him a free hand in the expenditure of the fund turned over to him is evident from the stipulation of facts.

It is there recited that the Commissioner sent certain road equipment to Pickett County, appointed a road superintendent, ignored the county road superintendent, and "that a small amount of work was done on roads in Pickett County, without any communication with the county highway commission, or requests to designate the roads upon which said work was done."

It is elementary that the quarterly county court has only such powers as are vested in that body by statute. *Railway Co.* v. *Wilson County,* 89 Tenn., 597, 15 S. W., 446, and *Henry* v. *Grainger County,* 154 Tenn., 576, 290 S. W., 2, citing earlier cases. The case before us is similar to one in which the county court undertakes to levy a special tax without stating the purpose for which

574

such a levy is made. A levy of this sort is void. The taxpayers of every county have a right to know for what purpose they are being taxed and also to know that taxes collected from them for any special purpose are applied to such purpose. This is necessary to enable the taxpayers to challenge a levy, if it be for a purpose not authorized by law, and if the levy is authorized, to compel the application of the tax to the purpose for which it was in fact levied. *Kennedy* v. *Montgomery County*, 98 Tenn., 165, 38 S. W., 1075; *Southern Railroad Co.* v. *Hamblen County*, 115 Tenn., 526, 92 S. W., 238; *Southern Railroad Co.* v. *Hamblen County*, 117 Tenn., 327, 97 S. W., 455. We think, therefore, when the county court undertakes to appropriate county funds that the purpose of the appropriation must distinctly appear. In order that the taxpayers may challenge such an appropriation, if for an unauthorized purpose, and may compel its proper application, if for an authorized purpose.

While under chapter 152 of the Public Acts of 1937 the county court would not be able at a special session to recall a valid resolution intrusting to the State Highway Commissioner the expenditure of the county's portion of the gas tax, we think that the county court did have authority at this special session to authorize this suit by way of having the invalid resolution of April 10, 1939, so declared. The chancellor directed that the peremptory writ of *mandamus* issue commanding the defendants Commissioner of the Department of Highways and Public Works and Director of Accounts of the State of Tennessee to divide and distribute to the county of Pickett the two-cent gasoline fund as provided by chapter 45 of the Public Acts of Tennessee of 1931 for the period commencing April 12, 1939.

We think this decree was proper and that the writ so

ordered will afford the county all relief to which it is entitled herein. The cause will be remanded to the chancery court of Davidson County, under supervision of which court the account between the state and the county may be settled and further orders made if necessary.

■ We think the chancellor properly divided the costs between the complainants and the defendants. The state officials acted in good faith throughout and the inconvenience to which the county was put was occasioned by the improvident resolution passed by its own governing body.

Affirmed as indicated.