KIRBY *et al. v.* KIRBY.

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

ROBERT T. MANN and WILLIAMS & WILLIAMS, all of Knoxville, for appellants.

CREEKMORE & BUHL, of Knoxville, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is an appeal by the sureties on a *ne exeat* bond from a judgment rendered against them for the face amount of the bond.

An original divorce suit was filed in the Chancery Court of Knox County by Mrs. Kirby against her husband Millard E. Kirby. This action was not tried as the parties apparently became reconciled. The defendant soon thereafter went to Nevada where he instituted a divorce action against his wife. The Tennessee case was never dismissed. After the Nevada suit was heard Mr. Kirby

returned to Tennessee when his wife amended her original action and asked for support for their children. In this amended action a writ of *ne exeat republica* to stay the defendant from departing from or leaving the state was asked. The writ being granted the bond here in question was executed.

Subsequent to the execution of this bond the defendant filed his answer to the proceeding relying on the Nevada divorce action. Then it was Mrs. Kirby filed an amended and supplemental bill attacking the Nevada divorce. The prayers of her original and amended and supplemental bills were granted. The cause was retained on the docket for the enforcement of the decree in regard to alimony and support for the children.

After this Millard E. Kirby left the State. When he could not be found she filed a petition in the cause setting forth the facts and asked a judgment against the sureties on the *ne exeat* bond. This petition was answered by the sureties, proof heard and a decree rendered against them from which this appeal comes.

The bond provides that the principal and sureties agree to pay the State of Tennessee $500 "unless the said Millard Kirby appear on the 3rd Monday of February, 1945, before Judge of Chancery Court in and for said County, and from day to day thereafter, until discharged by law to answer to said court this being a *Ne exeat* bond and *Deft.*, will not leave State, . . ."

The writ of *ne exeat* is in rather common usage in divorce actions but is seldom issued in other actions because the occasion for its demand rarely arises. It is directly recognized in our statute (Code section 10533) providing that injunctions, writs of *ne exeat,* etc., shall be granted by the Chancellor and other Judges. Its usage is to restrain a person from going beyond the limits of

the jurisdiction of the court until he has satisfied the complainant's claim or complied with the Court's decree. The mere statement of the purpose of the writ is an answer to why it is more frequently used in divorce actions than any other.

The writ may issue in a divorce action (we use the term divorce action as applying to any degrees of the action, suits for separate maintenance, support of children, etc.) ''solely upon the affidavit of the wife, but she must positively charge upon reasonable grounds, that the defendant is going out of the state or that he has said that such was his purpose.'' 17 Am. Jur., p. 430, sec. 527. The allegations of facts upon which the writ herein issued are more than sufficient to answer the above quoted requirements. She alleges that he had theretofore left the state to avoid a pending divorce action; that he had written her he would stay out West and from these facts she believed he would.

It is very ably and earnestly urged that these sureties were entitled to notice of the final decree in the divorce action which kept the bond in question in force and that the bill under which this writ was granted was merely for the support of the children and not the subsequent supplemental bill which also asked for a divorce.

It is generally understood and is the common practice for sureties to surrender their principal and be discharged from liability upon an ordinary bail bond. The responsibility of the parties is very similar to that in the instant case. The principal and one of the sureties were present in court or were informed immediately after the order was made keeping the *ne exeat* in force that such an order was made. The other surety is a brother-in-law of the principal. Yet knowing this and having the prin-

cipal then present they made no effort to be discharged from their obligations.

There was nothing in the various court orders to intimate or suggest that these sureties were relieved. They had no such effect.

''The contract (*ne exeat* bond) plainly implied that the litigation might continue for a considerable time, and that the court might command him (principal) to appear only when the exigencies of the case or the rights of the plaintiff made his presence necessary or proper. . . .

''If the surety had a right to surrender the principal, it had it without reference to the time when the judge might choose to command the principal's presence in court. If, on the other hand, the surety did not have this right of surrender, its legal status in reference to the principal was not affected. It could do nothing but wait for the termination of the suit with entire uncertainty as to the times when the court might think it necessary or proper to command the presence of the principal.'' *Dunsmoor* v. *Bankers' Surety Co.*, 206 Mass. 23, 91 N. E. 907, 908.

It will be noted from the above quoted applicable portion of the bond that the obligee is the ''State of Tennessee.'' Does this obligation inure to the benefit of the petitioner herein or should the action have been for the ''benefit of the State of Tennessee?''

We think Code section 8621 answers this question. This section provides:

''For any breach of an official bond or undertaking of any officer, executor, administrator, or guardian, or of any bond or undertaking required to be given by law for the security of the public generally, *or of particular individuals, the party aggrieved may, without assignment,*

*bring suit thereon for his use,* giving security for costs, and being liable therefor as if the suit had been brought in his own name.'' (Italics those of the court.)

In Gibsons Suits in Chancery, 4th Edition, page 134 at section 119, it is said:

''The effect of this statute is equivalent to an assignment of the bond to the person aggrieved to the extent of his damage, not exceeding, of course, the penalty of the bond.

''By both statute and judicial interpretation, the person for whose use the suit is brought is the real complainant of record, and, in Chancery, is the real complainant in fact. While technically a suit on any of the above mentioned bonds should be in the name of the State for the use of the party aggrieved, nevertheless the practice of suing directly in the name of the real complainant, and not in the name of the State, has long prevailed, and been directly sanctioned by the Supreme Court of the State.''

The above quoted Statute, Code 8621, was applied in a suit on an administrator's bond in the case of *Brannon* v. *Wright,* 113 Tenn. 692, at page 694, 84 S. W. 612, where it was said:

''It is true that the state is made payee in all bonds of guardians, but the ward is the real beneficiary. The state has no interest in guardians' bonds, except to protect the rights of minors. It is not the case of an official bond for the performance of a duty in which the general public is interested. The state is a proper party, and the suit should be brought in its name for the use of the minor, but the failure to bring the suit in the name of the state is not fatal to its maintenance in a court of equity.''

This statement is equally applicable on a suit on a *ne exeat* bond.

In the final decree entered herein on December 23, 1945, an award of $30 per month was made for the minor children of the parties among other awards for alimony, etc. In this decree the *ne exeat* was ordered to remain in force for the carrying out of this decree. Obviously at the present time more than the face of the bond has accumulated on the allowance for the children alone.

For the reasons herein above set forth the decree must be affirmed.

All concur.