STATE *ex rel.* ANDERSON COUNTY *v.* AYCOCK *et al.*

(*Knoxville,* September Term, 1951.)

Opinion filed December 14, 1951.

WALTER E. FISCHER, of Clinton, for appellant.

CLYDE W. KEY, of Knoxville, and J. M. UNDERWOOD, of Clinton, for appellees.

MR. JUSTICE BURNETT, delivered the opinion of the Court.

This is a suit for the collection of delinquent taxes in Anderson County for the year 1948. There were many defendants, among whom was the Southern Railway Company. This Company paid all of its 1948 taxes except so much thereof as was assessed as "salary" of twenty cents on $100.00 dollars. The Railway Company contended that this "salary" tax was void. The Chancellor

sustained this contention and the County has appealed.

The Railway Company filed its answer alleging that the Quarterly County Court of Anderson County had adopted the following tax rate for the year 1948:

| "County | $0.25 |
| Public School | 1.40 |
| Interest | 0.10 |
| Sinking Fund | 0.55 |
| Salary | 0.20 |
| Old Age Assistance | 0.10 |
| School Building | 0.32 |
| | |
| Total | $2.92" |

The answer further alleged that the Railway Company had paid "the full tax generated by a tax rate of $2.72 upon the assessed valuation of its property, and it attacked the validity of the special levy of twenty cents for 'salary' upon three grounds, namely, (1) the payment of salaries of County officials and employees is a general County purpose, and the Quarterly County Court was without authority to levy a special tax therefor, (2) the purpose for which said purported special levy was made does not sufficiently appear upon the face of the resolution levying said tax, or otherwise upon the minutes of said Quarterly County Court, and (3) if the special character of said levy be disregarded and said twenty cent levy added to the levy of twenty-five cents made for general County purposes, the aggregate of these two items exceeds the permissible levy of forty cents for general County purposes under Code Section 1045.1."

The County filed its motion to strike the answer of the Railway Company on the ground that the Railway Company's sole remedy was under the provisions of

Code Section 1790 et seq. which was pay the tax under protest and sue for its recovery.

■ ■ Code Section 1790 et seq. applies only to "revenue due the state." A taxpayer may contest the validity of a County levy when he has paid the State tax without paying the tax under protest and filing suit for the recovery thereof. *Louisville & N. R. Co.* v. *State,* 55 Tenn. 663; *Saunders* v. *Russell,* 78 Tenn. 293; *City of Nashville* v. *Smith,* 86 Tenn. 213, 6 S. W. 273; *Little Rock & M. R. Co.* v. *Williams,* 101 Tenn. 146, 46 S. W. 448; *State National Bank* v. *City of Memphis,* 116 Tenn. 641, 94 S. W. 606, 7 L. R. A., N. S., 663; *Nashville, C. & St. L. R. Co.* v. *Marion County,* 120 Tenn. 347, 108 S. W. 1058.

■ "A County's power to tax is delegated [power] and strictly limited to the scope of the delegation." *State ex rel. Campbell County* v. *Delinquent Taxpayers,* 183 Tenn. 64, 70, 191 S. W. (2d) 153, 155.

■ When a Quarterly County Court levies a special tax such tax is void unless it is made distinctly to appear that the levy is for an authorized purpose. *Robbins* v. *Phillips,* 175 Tenn. 568, 136 S. W. (2d) 507; *Southern Railway Co.* v. *Hamblen County,* 115 Tenn. 526, 92 S. W. 238.

The case below was tried on a stipulation of facts. The Quarterly County Court of Anderson County at its July, 1948, session, adopted a budget, a short summary of which is quoted from the answer of the Railway Company above. The only authority for the adoption of such a budget is found in the "Cash Basis Act", Chapter 300 of the Public Acts of 1937. The public as well as the court is entitled to take this budget and lay it alongside the tax levy adopted by the Quarterly County Court and see to what extent the public and the court are advised of the purposes of which the public is being taxed. Doing

this we find that the budget contains five items, namely: School purposes, $4,000,000 odd dollars; Roads, $60,000 dollars; Debt Service (bonds and interest), $86,000 odd dollars; Old Age Assistance, $9,500 dollars; General County Purposes, $77,000 odd dollars making a total of $4,286,724.91.

The budget breaks down the proposed expenditures for ''general County purposes'' into thirty-nine items, including the salaries of all County officers. These salaries are included in the total of the $77,385.00 dollars of budgeted expenditures for general County purposes. The budget does not contain any separate or additional item whatever calling for the payment of any salaries or requiring the levy of a special tax to pay any salaries.

The twenty-five cents levy for general County purposes actually produced revenues sufficient to enable the County to pay every budgeted item for general County purposes and to close the fiscal year with a surplus of an excess of $100,000 odd dollars. If the expenditures of $22,000 odd dollars were actually made from the ''salary'' fund, really had been made from the general fund, the surplus remaining in the general fund at the end of the fiscal year would have been in excess of $85,000 dollars. The record does not show for what purpose these expenditures were made from the ''salary'' fund but the record does disclose that the balance of $4,618.99 remained in the ''salary'' fund at the close of the fiscal year and it was transferred to the general fund. In other words the twenty-five cent levy for general County purposes plus the twenty cent levy for ''salary'' produced enough revenue to pay all budgeted items for all general County purposes, including salaries, by approximately two and one-half times more than was necessary.

. Under such circumstances it is very evident that the twenty-five cent levy for general County purposes was intended to and did produce sufficient sums to pay all general County expenses, including salaries, and there is no showing or need for any special levy of the twenty cents for salaries as was set forth in the budget. What such levy "salary" was is a mystery to us as it certainly would have been to any of the public who had examined it.

Insofar as we can determine or have been shown the Legislature has not delegated to Anderson County the power to levy a special tax for the payment of salaries. All salaries not payable out of the fees of the office under the Anti-Fee Bill are payable out of the General County Fund. Code Section 10242 provides for the payment of salaries of County officers and employees out of the General County Fund. This Code Section is applicable to every County in the State.

Where, as here, the levy is for an unauthorized purpose, it is void in its entirety, and its validity is not saved, even though it appear that a portion of the revenue to be produced thereby was intended to be expended for a lawful purpose. *Southern Railway Co.* v. *Hamblen County,* supra.

The appellant places much reliance upon the case of *Bright* v. *Halloman,* 75 Tenn. 309, and takes the position that under the authority of that case the twenty-five cent levy for General County purposes and the twenty cent levy for "salary" may be added together and that then the Court may find that forty cents of this forty-five may be held valid. It is conceded of course that the maximum levy under Code Section 1045.1 cannot exceed forty cents. This case in our judgment is not in point.

In the *Bright* v. *Halloman* case, supra, the Legislature had authorized the County Court of Obion County to levy a special tax of twenty cents for school purposes. The County Court in violation of this Statute levied a special tax of thirty cents. This Court then held the levy valid to the extent that the Legislature had authorized them to levy a tax and held that the excess as levied by the County Court was void. This case is not in point here because there is no statute in the instant case authorizing any special levy for the payment of salaries. As we have heretofore shown the levy for general purposes was far more than enough to cover salaries and other general purposes.

The appellant cites and relies upon the case of *Ward* v. *Alsup*, 100 Tenn. 619, 46 S. W. 573, as supporting its position that the Railway Company may not contest this tax here but must pay the tax under protest and sue for its recovery. The case of *Ward* v. *Alsup,* supra, is not in point because in that case the taxpayer paid under protest the State Ad Valorem taxes assessed against his real estate and then sued under Code Section 1790 et seq. to recover back the taxes upon the theory that the assessment was void because railroad companies and telegraph companies etc. were assessed at much less than their actual value, whereas his property was assessed at its full value, thus resulting in an inequality which rendered his assessment void. All this Court held in *Ward* v. *Alsup*, supra, was that the taxpayer as a condition precedent to maintaining such a suit, must first follow the procedure then available to him by statute of appealing to the proper assessing authorities for an equalization of assessments.

We have very carefully considered this case and read numerous authorities and are convinced that the Chancellor reached the correct conclusion. It results that his decree will be affirmed with costs.